BOOE *v.* ROAD IMPROVEMENT DISTRICT No. 4 OF PRAIRIE
COUNTY.

Opinion delivered December 8, 1919. ·

1.  COURTS—CONSTRUCTION OF OPINIONS.—The language of an opinion, like that of any other writing, must be given its plain and natural meaning except when used in a technical sense.

2.  CONSTITUTIONAL LAW—NOTICE OF SPECIAL BILLS.—Constitution, article 5, section 25, requiring at least thirty days' notice to be given of intention to apply for a special bill, is mandatory.

3.  STATUTES—PRESUMPTION.—The presumption is always in favor of the legality of legislative proceedings, and where the record, of which the court can take judicial notice, does not show to the contrary, the proceedings are conclusively presumed to have been in accordance with the constitutional requirement as to notice.

4.  CONSTITUTIONAL LAW—AUTHORITY OF LEGISLATURE—PLEADINGS.—The authority of the Legislature to pass special bills can not be ascertained from admissions of the parties in pleadings, from their agreements, or from proof introduced of facts not required to be made a ·matter of record by the Constitution.

5.  STATUTES — LEGISLATIVE AUTHORITY — EVIDENCE.—In determining whether passage of special act of September 30, 1919, was in compliance with the constitutional requirement as to notice, testimony of the ·Governor can not be considered, as it is not part of the record required or provided by the Constitution.

6.  EVIDENCE—JUDICIAL NOTICE.—The proclamation ·of the Governor calling an extraordinary session of the General Assembly is a record of which the courts take judicial notice.

7.  EVIDENCE—JUDICIAL NOTICE.—The courts take judicial notice of the date of passage and approval of a bill.

8.  STATUTES—SPECIAL BILL—NOTICE.—Where less than thirty days. intervened between the Governor's proclamation calling an extraordinary session of the General Assembly and the passage and approval of a special bill, the record conclusively shows that the constitutional requirement as to notice was not complied with.

Appeal from Prairie Chancery Court, Southern District; *John M. Elliott,* Chancellor; reversed.

STATEMENT OF FACTS.

W. I. Booe, a citizen and property owner within the limits of a road improvement district duly organized in Prairie County, Arkansas, under the Alexander Road Law, brought this suit in equity against the commission-

ers of said road improvement district to enjoin them from the issuing of $65,000 in bonds authorized by a special act of the General Assembly passed at the special session held in September, 1919.

On the 15th day of September, 1919, the Governor issued a public proclamation calling the General Assembly to meet in extraordinary session on the 22d day of September, 1919. The record of the General Assembly shows that it convened on that day and adjourned on the 1st day of October, 1919. Its records also show that the special act in question was passed at the special session and it was approved by the Governor on the 30th day of September, 1919.

The deposition of the Governor was taken by the defendant, and according to his testimony he wrote letters, more than thirty days before the special session convened, to nearly every member of the Legislature, telling him that it would be necessary to call the Legislature in extraordinary session to pass special road bills, and on the 18th of August, 1919, the Governor agreed with several persons interested that he would call a special session of the Legislature for the purpose of considering local improvement bills. In public speeches he made known that he intended to call the Legislature together again in special session, but no day was mentioned by him. His formal proclamation calling the Legislature together in extraordinary session under article 6, section 19, of the Constitution of 1874, was not issued until the 15th day of September, 1919.

At the hearing of the case the chancellor was of the opinion that the bill was a valid law, and it was decreed that the complaint be dismissed for want of equity. The plaintiff has appealed.

*W. H. Gregory,* for appellant.

The special act is unconstitutional, inoperative and void, because the call for the special session by proclamation of the Governor was less than thirty days prior to the convening of the Legislature, and thirty days' notice could not have been given. Const. 1874, art. 5, § 26.

*Ib.,* art. 6, § 19.   This court takes judicial·knowledge of
the issuance of the call and the convening of the Legis-
lature, and it is unquestionable that no opportunity could
have been given to publish the notice required.

*R. W. Robins, amicus curiae.*
    The courts of this State have no power to investi-
gate or determine whether notice of the introduction of
a special or local bill has been given as required by the
Constitution.   48 Ark. 370; 75 *Id.* 120; 87 *Id.* 8; 97 *Id.*
473; 44 L. R. A. (N. S.) 468; 130 Pac. 1114.

*Evans & Evans, amici curiae.*
    1.   This court judicially knows that the act is within
the terms of the call of the Governor and that it was
passed and approved in violation of the Constitution re-
quiring thirty days' notice.   48 Ark. 370 should be
overruled.
    2.   See in point cases in 5 Wheaton 1; 28 Ark. 378;
14 L. R. A. 459; Black, Const. Law, 319-20; 83 Ark. 448;
75 *Id.* 124.

*Mehaffy, Donham & Mehaffy, amici curiae.*
    1.   The act is unconstitutional and void because the
constitutional provisions as to notice were not given.
Kirby's Digest, § § 3718-19-20; 76 So. 33; 36 *Id.* 1024;
27 *Id.* 321; 38 *Id.* 647, 807-1031; 39 *Id.* 240-242, 357, 717;
46 *Id.* 251; 93 Ark. 336; 48 *Id.* 82; 93 *Id.* 336; 47 S. W.
798; 60 *Id.* 1085; 156 Pac. 1121; 22 L. R. A. (N. S.) 1089;
117 Ark. 252.
    2.   The passage of the act violates art. 5, § 25, of the
Constitution also.   The act shows on its face that it is
an amendment to the Alexander Road Law.
    3.   It violates Amendment No. 10.   109 Ark. 479
has not been overlooked.   See 25 L. R. A. (N. S.) 60.
The people should be protected by the constitutional pro-
visions as to notice and publication.   6 R. C. L., § § 69,
70-76, 114.
    4.   The act violates the United States Constitution
and Amendment No. 14 thereto.   Kirby's Digest, § §
3718-19-20.

*J. I. Trawick, amicus curiae.*

The act is invalid and violative of the Constitution. The cases in 40 Ark. 370, 75 Ark. 120, 86 S. W. 844, should not be followed. 137 Cal. 28; 27 Atl. Rep. 356, and others.

*Emmet Vaughan, Coleman, Robinson & House, Clyde Going, Huddleston, Fuhr & Futrell, S. W. Adams, E. E. Hopson, J. R. Wilson, Rowell & Alexander, McMillan & McMillan, Harry P. Dailey, Holland & Holland, V. M. Miles, Roy D. Campbell, Harry Woods, J. G. Sain, U. J. Cone, S. S. Hargraves, Grover T. Owens* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. The question raised here has been often decided adversely to appellant's contention. 48 Ark. 370; 75 *Id.* 120; 87 *Id.* 8; 97 *Id.* 478; 120 *Id.* 406; 11 Cyc. 755; 55 Ark. 198. The Governor, Attorney General and members of the Legislature had a right to rely on these decisions.

2. The required notice could have been given. The testimony shows it. It was not impossible to give it as required by the Constitution and § § 4101-3, Kirby & Castle's Digest.

Hart, J., (after stating the facts). The General Assembly convened in special or extraordinary session on September 22, 1919, pursuant to a proclamation of the Governor issued on the 15th day of September, 1919. The special session lasted nine days, adjourning on the 1st day of October, 1919. The act in question in the case at bar contained the emergency clause, and was approved on the 30th day of September, 1919. The act is a special one, and was held valid by the chancery court. Its constitutionality is attacked on the ground that the notice required by article 5, section 26, of the Constitution of 1874 was not given; and the correctness of the decision of the chancellor depends upon the construction to be placed upon that provision of the Constitution and the decisions of this court relating to the subject. The provision of the Constitution is as follows:

"No local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall be at least thirty days prior to the introduction into the General Assembly of such bill, and in the manner to be provided by law. The evidence of such notice having been published shall be exhibited in the General Assembly before such act shall be passed."

Two theories exist in the United States with regard to provisions of the Constitution similar to the one under consideration in this case.

On the one hand, it is held that the behest of the Constitution is addressed to the Legislature itself and should be obeyed by that body; but that the matter ends with that department, and courts are not allowed to annul acts of the Legislature in any case because of its failure to follow the requirement. In short, in some jurisdictions such provisions of the Constitution are held to be directory merely.

On the other hand, in other States similar provisions of the Constitution have been held to be mandatory and subject to judicial review where the record, which can be judicially noticed, shows that the Legislature failed to follow the requirement or disregarded it.

The first case construing the clause under considertion in this State is *Davis* v. *Gaines,* 48 Ark. 370, and this has since been called the leading case on the subject: In that case the court first had under consideration article 5, section 25, of the Constitution, which provides that in all cases where a general law can be made applicable, no special law shall be enacted. The court said the act in that case was a special one, and that a general law could have been framed to apply to all portions of the State in like situation was demonstrated by the fact that there was such a law on the statute books at the time of the passage of the special act. The court further said that the Legislature was the sole judge whether provision by general law was possible except in certain cases enumerated in

the Constitution; and that the provision was merely cautionary to the Legislature.

After concluding the discussion upon this branch of the case, the court said:

"The same remarks apply to the passage of the bill without the previous publication of notice of the intention to introduce it. Section 26 of article 5, Constitution of 1874, requires evidence of such publication to be exhibited in the General Assembly before the bill becomes a law. But if the General Assembly chose to disregard this requirement, and to enact a local or special law without notice, no issue upon the subject of notice can be raised in the courts."

It is insisted by those seeking to uphold the act that the effect of the language just quoted is to hold that the provision of the Constitution is directory merely, and is not subject to review by the courts in any case. Of course, the language of any opinion like that of any other writing must be given its plain and natural meaning except when used in a technical sense. The dictionary meaning of 'disregard' is 'to pay no heed to;' 'to fail to notice or observe.' The word 'choose' implies election or choice. The words 'no issue upon the subject of notice can be raised in the courts' mean that the action of the Legislature could not be reviewed by the courts. Therefore, the plain and natural meaning of the words, 'But if the General Assembly choose to disregard this requirement, and to enact a local or special law, without notice, no issue upon the subject of notice can be raised in the courts,' mean that if the Legislature should pay no attention to the requirement and pass a special law without notice, its action is not subject to review in the courts. The court went further than it was necessary to do under the facts of that case. It was admitted in that case that no notice was given and the special act was passed at a regular session of the Legislature. The language of the provision is mandatory. It provides that no special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality

where the matter affected may be situated. The length of time the notice is to be published is provided for. It further provides that evidence of such notice having been published shall be exhibited in the General Assembly before such act shall be passed.

One object of the requirement was to prevent hasty and improvident legislation. Another purpose was to give the people of the locality to be affected an opportunity to be heard upon the proposed legislation affecting their interest. This is especially important in cases of special improvement districts where the assessment of benefits is often made by the Legislature itself. It is important to the property owner that he be notified of the proposed legislation in order that he may have an opportunity to be heard upon a matter which so vitally affects his interest. The right to petition and protest has ever been recognized as the right and privilege of every free people, and the framers of the Constitution intended that this right should be made available to them in a useful and practical manner. Of course, the presumption is always in favor of the legality of the legislative proceedings, and where the record of which the court can take judicial knowledge does not show to the contrary, the proceedings are conclusively presumed to have been in accordance with the constitutional requirement as to notice. It is provided that evidence of the publication of the notice shall be exhibited to the Legislature so that it can know that every one affected has had an opportunity to be heard before the bill is passed. The Constitution does not require that evidence of the notice shall be spread upon the journals or otherwise preserved as evidence. Hence we hold that the passage of the act is conclusive of the fact that due notice was given unless the record of which the courts may judicially take notice shows otherwise.

As we have already seen in the case of *Davis* v. *Gaines, supra,* it was alleged in the complaint that the notice required by the Constitution was not given. A demurrer was interposed to the complaint, which had the

effect to admit its allegations to be true. It would not do to relegate to the courts the ascertainment of a jurisdictional fact for the Legislature upon admissions in pleadings by agreement of the parties or by proof introduced of facts not required to be made a matter of record by the Constitution. To hold otherwise would make the validity of special laws depend upon the action of the parties, and might make it valid as to one person and invalid as to another in the locality affected by it. Such a course would not only be ruinous to the people in such localities but might unsettle every special act passed since the adoption of the Constitution.

Hence in the case of *Davis* v. *Gaines, supra,* the fact that it was shown by the pleadings that no notice was given amounted to nothing. The act was passed at a regular session of the Legislature. The time and place when the Legislature should convene in regular session is fixed by the Constitution. So far as the record of which the court could take notice was concerned, the notice might have been given for the time and in the manner prescribed by the Constitution and evidence of the publication of the notice might have been exhibited to the Legislature before the act was passed. Hence the court should have held in that case that there was a conclusive presumption that the Legislature had found that the requirement of the Constitution had been complied with, there being nothing in the record of which the courts could take judicial notice of to the contrary. It was not necessary, therefore, for the court to decide that the subject of notice could not be reviewed by the courts or what amounts to the same thing, saying that no issue upon the subject of notice can be raised in the courts. To the extent that the opinion in that case conflicts with the views herein expressed, it is overruled.

In the case of *Stevenson* v. *Colgan,* 14 L. R. A. 459, the Supreme Court of California, in discussing the right of judicial review of legislative proceedings in enacting laws said:

"The authority and duty to ascertain the facts which ought to control legislative action are, from the necessity of the case, devolved by the Constitution upon those to whom it has given the power to legislate, and their decision that the facts exist is conclusive upon the courts, in the absence of an explicit provision in the Constitution giving the judiciary the right to review such action. We therefore hold that, in passing upon the constitutionality of a statute, the court must confine itself to a consideration of those matters which appear upon the face of the law, and those facts of which it will take judicial notice. If the law, when thus considered, does not appear to be unconstitutional, the court will not go behind it, and by a resort to evidence undertake to ascertain whether the Legislature in its enactment observed the restrictions which the Constitution imposed upon it as a duty to do, and to the performance of which its members were bound by their oaths of office."

In *Green* v. *Weller,* 32 Miss. 690, the court said:

"It has been urged that it is the duty of the judiciary, in passing upon the constitutionality of acts of the Legislature, to preserve with strictness the limitations and safeguards provided in the Constitution against the undue exercise of power by the stronger department of the government. But the duty of strict confinement within its constitutional powers is equally incumbent on each department of the government. It may be that legislative acts may be passed without a compliance with the reqirements of the Constitution. If such defect or violation appear on the face of the act, or by that which constitutes the record, which can be judicially noticed, the power of the court to determine the question is indisputable. But if the proper record shows that the act has received the sanction required by the Constitution, as evidence of its having been passed agreeably to the Constitution and its provisions be not repugnant to the Constitution, the regularity and stability of government and the peace of society require that it should have the force of a valid law. For otherwise every act of the

Legislature would be open to be impeached, upon an inquiry into the facts which took place at its passage; all confidence in legislative acts would be destroyed; these acts, instead of receiving the sanction of the community, would open the door to litigation, and confusion and anarchy would take the place of law and order. Hence the wise maxim of the law, that such are presumed to be duly and solemnly done until the contrary be shown in proper form; and it is this presumption which protects the judgments of courts from impeachment collaterally."

The result of our present views is that the provision of the Constitution is mandatory and should be obeyed by the General Assembly, but there is always a presumption in favor of the legality of the legislative proceedings and that such proceedings are conclusively presumed to have been in accordance with the constitutional requirements unless the record of which the courts can take judicial notice show to the contrary.

The question does not appear to have come up again before the same members who participated in that decision. It must be admitted that the later decisions of the court do not clear up the question. Some of them, as in the cases of *Caton* v. *Western Clay Drainage District,* 87 Ark. 8, and *State ex rel.* v. *Woodruff,* 120 Ark. 406, seem to have followed closely the language of *Davis* v. *Gaines, supra.* Others like *Waterman* v. *Hawkins,* 75 Ark. 120, and *St. Louis Southwestern Railway Company* v. *State,* 97 Ark. 473, seem to have the view of the present opinion. All of the cases on the subject up to the present time arose from acts passed at regular sessions of the Legislature and were properly held valid for the reasons stated above.

This brings us to a consideration of the peculiar facts of the case at bar. For the reason already given, the testimony of the Governor can not be considered. It is no part of the record required or provided in the Constitution and can not be considered. The confusion that would result and the evils that might result from such a course are obvious. The uncertainty of memory and of

life itself, and the frailties of human nature, make it impracticable for laws to rest upon such a foundation. Such a course would be fraught with evils too numerous and varied to be classified.

Article 6, section 19, of the Constitution of 1874, reads as follows:

"The Governor may, by proclamation, on extraordinary occasions convene the General Assembly at the seat of government, or at a different place, if that shall have become since their last adjournment dangerous from any enemy or contagious disease; and he shall specify in his proclamation the purpose for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days."

The proclamation of the Governor under this clause of the Constitution was issued on the 15th day of September, 1919, calling an extraordinary session of the General Assembly to convene at the seat of government on September 22, 1919, and the act in question was approved September 30, 1919.

The General Assembly could not be called into extraordinary session except by proclamation issued by the Governor under article 6, section 19, of the Constitution. When the proclamation was issued, it became a record of which the courts could take judicial cognizance. The courts will, also, take judicial notice that the bill was passed and approved September 30, 1919. Article 5, section 26, provides that the notice of the intention to apply to the General Assembly for the passage of a special law shall be given at least thirty days prior to the introduction into the General Assembly of such a bill. This notice was not required to be given until after the proclamation of the Governor calling the Legislature to meet in extraordinary session was issued. Until that was done, no one could know that it would be called, and no notice under the Constitution could be given. The Con-

stitution provides the time and place for regular sessions of the General Assembly. Article 5, section 5, of the Constitution of 1874. The time and place for the extraordinary session are fixed by the proclamation of the Governor. Article 6, section 19, Constitution of 1874. Therefore, until the Governor's proclamation is issued, there is nothing upon which to predicate action in giving notice of an intention to apply for the passage of a special act. Less than thirty days elapsed from the date of the issuance of the Governor's proclamation until the date the bill under consideration was approved by him. Hence it was impossible that the requirement of the Constitution with regard to giving notice could have been complied with.

Therefore, this is a case where the record of which the court may judicially take notice shows conclusively that the requirement of article 5, section 26, of the Contitution of 1874 could not have been complied with by the Legislature, and under the views above expressed it is the duty of the court to declare the special act under consideration unconstitutional and void.

It follows that the decree must be reversed and the cause will be remanded with directions to grant the prayer of the complaint.

McCULLOCH, C. J., (concurring). I concur in the judgment declaring the special statute under consideration to be void, for the reason that the constitutional provision requiring notice of the introduction of the bill for such a statute is mandatory and, after giving conclusive effect to the implied finding by the Legislature that such notice as could have been given was in fact given, we find from the consideration of public records of which we take judicial cognizance that the executive proclamation calling the Legislature in extraordinary session did not give sufficient time for the required notice and that a notice given before the calling of the session was not valid.

But I am unwilling to treat the case of *Davis* v. *Gaines* as being overruled by this decision. The lan-

guage of the opinion in the case referred to is a little ambiguous and is open to either interpretation that the constitutional provision in question is merely directory or that the legislative determination as to the giving of notice is conclusive. I think, however, that the learned justice who wrote the opinion in that case had in mind that the legislative determination was conclusive as to the required notice having been given and that he meant, by the language used, to express that view, rather than the view that the provision is directory. When he stated that "if the General Assembly choose to disregard this requirement, and to enact a local or special law without notice, no issue upon the subject of notice can be raised in the courts," he meant that, notwithstanding the Constitution required notice, yet the Legislature had the power to disregard it by a false or erroneous finding that the notice had been given, and that in such event the finding is conclusive and an issue thereon can not be raised in the courts for the purpose of defeating the statute. He did not say that the constitutional provision on that subject was directory, but, on the contrary he referred to it as a "requirement," which means, of course, that it is mandatory. A requirement is not a direction. It is a mandate, an execution. The language of that opinion, in so far as it might appear to hold that the constitutional provision is directory, may well be disapproved for the sake of making the position of the court clear on this question, but I object to treating the case as being overruled.

The next case in which this court dealt with the subject after *Davis* v. *Gaines,* was *Waterman* v. *Hawkins,* 75 Ark. 120, and we put the decision squarely on the ground that the Constitution required the giving of notice but that the legislative finding as to the giving of notice was conclusive—that courts should "indulge the conclusive presumption that evidence of such publication was properly exhibited before the passage of the act,"—and *Davis* v. *Gaines* was cited as supporting that view.

The case of *Waterman* v. *Hawkins* has generally been cited in subsequent opinions with *Davis* v. *Gaines* as stating the position of the court with regard to this question.

Mr. Justice SMITH shares the views here expressed.